UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

MAR 01 2001

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:00CR00539 CEJ |
| ) | (LOD) |
| MICHAEL RAY PRUNEAU, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States Magistrate Judge for ruling and recommendations for rulings on all pretrial matters under 28 U.S.C. § 636(b).

Michael Ray Pruneau is before the Court charged alone in a nine-count indictment filed November 30, 2000 with various acts of sexual activity with a minor in the spring of 2000 and related offenses. Mr. Pruneau appeared before United States Magistrate Judge Frederick R. Buckles for his initial appearance on January 12, 2001 pursuant to a writ bringing him from a state prison where he is serving sentences for sodomy and forgery. Counsel was appointed, and the defendant was detained.

On January 17, 2001, Mr. Pruneau was arraigned before Judge Buckles and, following a not guilty plea, a hearing on motions was scheduled for February 12, 2001.

The government filed a motion on January 19, 2001, pursuant to 18 U.S.C. § 3501, to determine the admissibility of an alleged confession. After a change of the motion hearing date, on February 9, 2001 the parties appeared and defendant belatedly, but without



objection, filed a motion to suppress evidence and statements. Evidence was adduced from one government witness and two exhibits were introduced. AFPD Kevin C. Curran came with the defendant, and AUSA Kymberly A. Smith represented the government.

## THE HEARING

FBI Special Agent P. Michael McComb testified that he has been an agent for 21 years, working on child molestation investigations. He said that several weeks prior to August 24, 2000, he had received a call from Ste. Genevieve, Missouri, Police Chief Brian Clubb, who advised him of his investigation of this defendant for bad checks and child molestation. No formal charges had been made, and the defendant was not then in custody.

On August 24, 2000, Chief Clubb called him again and said Mr. Pruneau was in custody on state charges. Nothing was said about Pruneau having an attorney, but Agent McComb said he was not concerned about that because he was only investigating the federal charges. He said he did not know how long the defendant had been in custody.

On that same day, Agents McComb and Paul Allen drove to Ste. Genevieve, Missouri, where they interviewed the defendant about 5 p.m. in a room in the county jail used by attorneys to talk to their clients. It was about 8 by 10 feet, with a table and chairs. The defendant was not handcuffed, and the agents were not armed. Agent McComb said he wanted to talk to the defendant only about the federal law violations, but he said they involved the same minor child and were related to the conduct which formed the basis of the state charges. McComb said that he and Allen did not know if the defendant had an attorney on the state charges, but he said that it would not have changed things even if he did.

Agent McComb said the first thing he and Allen did after identifying themselves was go over the Advice of Rights form (Government Exhibit #1) with the defendant. McComb said he read the entire form to the defendant, who said that he understood it and signed it. The defendant was cooperative and not at all reluctant to talk to them. He never asked for an attorney, and the officers never made any threats or promises.

McComb said he had taken a photograph with him for the interview, but he never mentioned it or showed it until after the defendant had agreed to talk to him. He said he told the defendant he wanted to talk about his relationship to the juvenile. After the interview, McComb said he summarized the interview and typed it up in a four-page FBI 203 form on September 7, 2000.

Agent McComb then related information given to him by a Detective Jeffrey A. Burgert regarding an interview Det. Burgert had with the defendant four days later, about 2 p.m. on August 28, 2000.

Detective Burgert told Agent McComb that he had interviewed the defendant at the same county jail about bad checks and the state sex charges. Burgert said he first read the Pre-interrogation Warning and Advice of Rights form (Government Exhibit #2) to the defendant and had the defendant initial each of the five rights listed. The defendant told Burgert that he understood his rights, and he signed the form below the consent paragraph. Burgert told McComb that only he and the defendant were in the interview room and that no threats or promises had been made. Burgert was not armed, and the defendant was not cuffed. Burgert said that initially the defendant had agreed to talk only about the sex charges, but later he changed his mind and also talked about the check charges.

After the interview, Burgert said he wrote up a report about it.

Government Exhibit Nos. 1 and 2 were admitted as evidence.

Defendant cross-examined Agent McComb but offered nothing further. Neither side requested argument, but the government agreed to supply the Court and counsel with the dates of the state charges and the defendant's arrest by state officers.

On February 12, 2001, the government provided the Court and defendant's counsel with a packet of documents it had received from the Ste. Genevieve Police Department consisting of some or all of its records, including court documents, regarding the prosecution of Mr. Pruneau for forgery, check, and child molestation charges in the years 2000 and 2001. (The Court marked this packet as Government Exhibit #3.)

On February 13, 2001, the Court directed a letter to counsel with a summary of the Court's preliminary opinion of the sequence of material events shown by the documents in Government Exhibit #3 and invited counsel's comments and/or additional evidence relative to that exhibit.

On February 27 and 28, 2001, defendant's counsel orally informed the Court by telephone that he agreed with the Court's analysis of the documents stated in its letter and that he had nothing further to offer. The government had no comment.

The documents show that a state complaint was filed on July 21, 2000 charging Mr. Pruneau with various acts of sodomy and sex with a child between June 15 and July 3, 2000. A warrant was issued on that complaint the same day. Other warrants for the defendant's arrest on forgery and check charges and for failure to appear on bond had been issued on July 3, 2000. Although the defendant had been earlier represented by counsel on the forgery

charges, that counsel had withdrawn on May 25, 2000 after the defendant had failed to appear on his bond.

The arrest record shows that defendant was arrested in Springfield, Missouri, on August 22, 2001 on the sodomy and rape warrant and then transported back to Ste. Genevieve County on the afternoon of August 23, 2000. He was in Ste. Genevieve County custody from August 22 to at least November 9, 2000. The state public defender was appointed to represent defendant on the state charges on August 29, 2000.

## DISCUSSION

A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170.

Because they were custodial interrogations, defendant was advised of his <u>Miranda</u> rights prior to both interrogations as described in the statement of facts herein. On each occasion he acknowledged that he understood his rights and voluntarily waived them by making statements. <u>Patterson v. Illinois</u>, 487 U.S. 285, 292-93 (1988).

There is no requirement that <u>Miranda</u> warnings be given in any specific words or form, <u>Duckworth v. Eagan</u>, 492 U.S. 195, 109 S.Ct. 2875, 2879 (1989), but here the rights were in writing. The rights are "not themselves rights protected by the Constitution but [are] instead measures to ensure that the right against compulsory self-incrimination [is] protected." <u>Michigan v. Tucker</u>, 417 U.S. 433, 444 (1974). Therefore, defendant was fully and completely advised of his <u>Miranda</u> rights.

The defendant had been formally charged at the times when he was interrogated, but had no attorney and did not request one. He had been in custody in Ste. Genevieve County at the time of the first interview a little over 24 hours and at the time of the second about five days. It is troublesome that the defendant was not sooner taken before a state judge following his arrest. It appears that he was arrested by Green County, Missouri, officers on a Tuesday and transported the more than 200 miles back to Ste. Genevieve County, Missouri, the next day, Wednesday. The following day, Thursday, is when defendant was interviewed by the federal agent, and he was then questioned by the city detective the next Monday, August 28. The warrant was shown "returned" on August 28, 2000 in the docket sheet kept for the sodomy and rape complaint. Presumably, defendant went to court on Tuesday, August 29, when he was shown as applying for the public defender. A public defender entered his appearance on September 5, 2000.

Nothing in the documents and evidence gives any indication that defendant asked for counsel before the time he applied in court on August 29, and clearly he was not represented by counsel on August 24 or 28. He was being held in custody after a judicial officer had <u>ex parte</u> found probable cause on July 21, 2000 for a felony violation. Furthermore, the evidence shows that before each interview defendant was informed of his right to be represented by an attorney and that one could even be appointed for him if he chose. Instead, he chose to answer questions without one. Nothing suggests that the state was holding the defendant without a court appearance for the purpose of coercing him into a confession. Rather, the delay was caused by the intervening Friday and weekend when the court may not have been in session. Nor does it appear that the delay in taking the defendant before a judge played any part in the defendant's willingness to talk to the officers.

In any event, the federal officer's interview took place the day following the defendant's return to Ste. Genevieve County, and that interval of time raises no question about its effect on the voluntariness of defendant's confession.

All in all, the circumstances show that the decision of this normal adult male Caucasian to talk to the officers was voluntarily made after being made fully aware of his right to remain silent. In addition, no promises, threats, pressure, or coercion induced him to make the statement. His will was not overborne, and any presumption that the delay in getting him to court affected his decision is overcome by the evidence of his freely given consent to talk. The officers were not armed, and on the first occasion there were only two FBI agents present and on the second only a single police detective. Defendant's statements should not be suppressed. <u>Colorado v. Connelly</u>, 479 U.S. at 167.

# RULINGS AND RECOMMENDATIONS

**Being now fully informed in the premises and after careful consideration of the matter, including the response, if any, the Court rules upon the following motion as indicated.**

Dkt #10    Government's Motion for a Determination Admissibility Pursuant to Title 18 § 3501

This motion is **granted**, and the hearing has been held. The statements are voluntary.

**Being now fully informed in the premises and based upon the evidence adduced at the motion hearing and the response, if any, to the motion, the Court recommends as follows:**

Dkt. #14    Motion of Defendant to Suppress Evidence and Statements

That this motion be **denied**, as there appears to be no evidence seized from the defendant or from his constructive possession in any place where he has a reasonable expectation of privacy, and the statements he made on July 24 and 28 are voluntary.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact. United States v. Benshop, 138 F.3d 1229 (8th Cir. 1998).

At the direction of District Judge Carol E. Jackson, the trial in this matter is set for

**Monday, April 2, 2001, at 9:00 a.m.**

                                          /s/ Lawrence O. Davis
                                          LAWRENCE O. DAVIS
                                          United States Magistrate Judge

Dated this 1st day of March, 2001.

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING


AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 03/01/01 by mberg
              4:00cr539    USA vs Pruneau


COPIES FAXED AND/OR MAILED TO THE PARTIES LISTED BELOW AND THE
UNITED STATES PROBATION OFFICE AND UNITED STATES PRETRIAL SERVICE OFFICE.
IF THIS IS A JUDGMENT IN A CRIMINAL CASE SEND CERTIFIED COPIES TO THE
FOLLOWING:    4 Certified Copies to USM
              2 Certified Copies to USP
              1 Copy to Financial
              1 Copy to O.S.U.

| | |
|---|---|
| Kevin Curran - | Fax: 314-421-3177 |
| Ilene Goodman -  30932 | Fax: 314-421-3177 |
| Kymberly Smith - | Fax: 314-539-7695 |

CC: Judge Jackson

SCANNED & FAXED BY:

MAR - 1 2001

DJO